CORNELL WOOD PRODUCTS CO. v. HARTFORD STEAM BOILER INSPECTION & INS. CO.

No. 4098.

District Court, N. D. Illinois, E. D.

April 16, 1945.

Findings of Fact

1. This suit is based upon a certain policy or contract of insurance (No. 43400) issued by defendant to plaintiff January 4, 1941, whereunder plaintiff seeks to recover (1) for direct loss or damage to certain objects owned or leased by plaintiff specified in said policy and (2) for daily indemnity at the rate of $2,000 per day during the period of alleged Total Prevention of business on the premises described as the Assured's (plaintiff's) plant located on the Chippewa River at Cornell, Wisconsin, alleged to have been due or caused by an "accident", as defined in said policy, to an object or objects described in said policy;

2. That an "accident" within the purview and coverage of said policy was specifically defined and limited therein as follows:

" * * * 'accident' shall mean a sudden and accidental breaking, deforming, burning out or rupturing of the object or any part thereof, which manifests itself at the time of its occurrence by immediately preventing continued operation or by immediately impairing the functions of the object

and which necessitates repair or replacement before its operation can be resumed or its functions restored";

3. That on August 30 and 31 and September 1, 1941, excessive rainfall caused said Chippewa River to overflow its banks and to inundate certain portions of plaintiff's plant and certain of the objects specified in and insured by said policy, as therein provided;

4. That plaintiff took such precautionary steps as it deemed proper and necessary to protect the property of said insured against loss and damage from said flood waters;

5. That there was no breaking, deforming, burning out or rupturing of any insured objects or parts thereof, within the scope or meaning of the policy definition of an "accident" insured against; and

6. That the softening and swelling of certain generator separator wedges alleged and proved by plaintiff was not "sudden and accidental" and did not manifest itself as required by said policy, but was the result of the submersion thereof in water for sixty hours or more following said flood and inundation.

### Conclusions of Law

As a matter of law, based upon the pleadings, the policy or contract of insurance, the Stipulation of Facts, the testimony introduced in addition to said Stipulation, this Court's special Findings of Fact as above outlined and an examination of authorities submitted by the respective parties, this Court concludes as follows:

1. That under said policy or contract of insurance plaintiff has no right to recover against the defendant upon the issues herein and that judgment should be entered for the defendant at plaintiff's costs;

2. That the provisions, definitions and limitations of said policy or contract of insurance are full, complete, definite, specific, certain and unambiguous as to the coverage extended thereby and that said policy can and should be interpreted by the application of the common speech meaning of said policy provisions, definitions and limitations;

3. That under the allegations of the complaint, as amended, and the evidence herein, there was no "accident" as defined in and insured against by said policy or contract of insurance, either as related to "direct damage" under Section I or to Total Prevention of business under Endorsement No. 3 of said policy.

Poppenhusen, Johnston, Thompson and Raymond, of Chicago, Ill., for plaintiff.

Arthur S. Lytton, of Chicago, Ill., for defendant.

CAMPBELL, District Judge.

This is a suit by the plaintiff to recover under a policy of insurance issued by the defendant on thirty-six objects of a mechanical and electrical nature.

The plaintiff operates a dam, power house and plant on the Chippewa River at Cornell, Wisconsin. On August 30 and 31 and September 1, 1941, this river overflowed its banks during a heavy rainfall which produced the greatest rise in the history of the river, causing the same to inundate the plant of the plaintiff and most of the objects therein insured by the defendant.

The facts are almost entirely set forth in a detailed stipulation with attached exhibits which has been duly filed herein and has been received in evidence. Some additional oral testimony was heard at the trial before the Court without a jury.

Three questions are presented:

First, whether the occurrences of August 30, 31 and September 1, 1941, constitute an "accident" as defined in the policy sued upon.

Second, the ownership of the objects enumerated in the policy.

Third, the amount of loss or damage to the said objects.

As to the first question, the plaintiff contends and defendant denies that the sudden flood and resulting tremendous rise of water level and inundation of the plant is an accident as defined in the policy sued upon herein. The defendant also contends that the submersion of the insured objects was the result of the deliberate and intentional act of the plaintiff in permitting water to accumulate in the room where the objects were located by ceasing its efforts to eject and control the flood waters. On this latter point I find no merit to the defendant's contention. The evidence shows that the plaintiff took all reasonable precaution to protect the insured objects from the flood waters and abandoned its efforts in this regard only when in the exercise of sound discretion it seemed necessary to do so in order not to endanger human life.

On the question as to whether the flood described constitutes an accident as that term is defined in the policy sued upon, I am of the opinion that it does not. I believe that a flood such as occurred in this case comes within the broad and general definition of the term "accident." The policy sued upon, however, does not cover the objects insured therein against any and all type of accidents, but specifically defines within precise limitations the term "accident" as follows:

" 'Accident' shall mean a sudden and accidental breaking, deforming, burning out or rupturing of the object or any part thereof, which manifests itself at the time of its occurrence by immediately preventing continued operation or by immediately impairing the functions of the object and which necessitates repair or replacement before its operation can be resumed or its functions restored;"

The evidence in this case clearly discloses that although the flood itself might be regarded as accidental in a generic sense, there certainly was no breaking, deforming, burning out or rupturing of any of the objects insured. All of the objects insured were, of course, damaged by being submerged. In one instance (No. 2 Generator), certain fiber separator wedges were found to be softened, swollen and therefore ineffective when that generator was later taken apart. This swelling, however, was the result of the sixty hour submersion in water (Stipulation p. 36) and certainly could not be regarded as sudden or accidental, even if it might be regarded as a "deforming." I must therefore conclude that the objects insured were not damaged or destroyed as the result of an accident as defined in the policy.

Many authorities are cited by the plaintiff in its briefs and I agree that they fully and aptly state the recognized principles of insurance law and contract construction. In this case, however, we are confronted not with a problem of general construction, but with the problem of applying the common speech meaning of the clear and limited definition contained in the policy itself to the facts in question. I find no ambiguity in the policy definition and therefore no necessity to apply the general anthorities cited by the plaintiff.

One case cited by the plaintiff, however, construes an insurance policy, the language of which is identical with the policy in question herein. I refer to the case of Ocean Accident & Guarantee Corporation, Ltd., v. Penick & Ford, Ltd., Inc., 101 F.2d 493. In this case the Circuit Court of Appeals for the Eighth Circuit found that the evidence disclosed proof of an actual rupture of a copper strap in a piece of machinery insured and held such rupture to be a breaking and deforming within the policy definition. The other elements of the definition being also present, the Court decided that the jury properly found for the plaintiff. In applying the same reasoning and common speech meaning to the clear language of the policy definition of "accident" in this case, I find that the plaintiff has not proved an accident within such definition and therefore is not entitled to recover.

Since I find for the defendant on this question, it is unnecessary to consider the further questions of ownership and amount of damage.

The defendant made a motion for judgment at the end of plaintiff's evidence and a similar motion at the end of all of the evidence and since there was no jury both motions were taken under advisement by the Court. In view of what I have stated hereinabove, I would have granted the defendant's motion made at the conclusion of plaintiff's evidence had the case been tried to a jury. Since all of the evidence is now in, however, and since the record is complete, I shall dispose of the case at this time by finding for the defendant on the basis of all the evidence on the issue of want of policy coverage.

### Order of Judgment

Wherefore, upon consideration of all of the evidence offered by both parties herein, it is hereby ordered that judgment be and same is hereby entered herein for defendant and against plaintiff upon the issues herein, together with costs of defendant against said plaintiff.